FILED

2009 JUN 15  PM 4: 06

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:_____

1  Julia Penny Clark*
2  Robert Alexander*
   Kathleen M. Keller*
3  kkeller@bredhoff.com
   Bredhoff & Kaiser P.L.L.C.
4  805 Fifteenth St., N.W., Suite 1000
5  Washington, D.C. 20005-2207
   Telephone: (202) 842-2600
6  Fax: (202) 842-1888
7
   Glenn Rothner (CSB No. 67353)
8  Ellen Greenstone (CSB No. 66022)
9  egreenstone@rsgllabor.com
   Rothner, Segall, Greenstone & Leheny
10 510 South Marengo Ave.
11 Pasadena, CA 91101-3115
   Telephone: (626) 796-7555
12 Fax: (626) 577-0124
13
14 Attorneys for Plaintiff John Ronches
15 Scott A. Kronland (CSB No. 171693)
   skronland@altshulerberzon.com
16 Altshuler Berzon LLP
17 177 Post Street, Suite 300
   San Francisco, CA 94108
18 Telephone: (415) 421-7151
19 Fax: (415) 362-8064
   Attorney for Plaintiff SEIU United Long Term Care Workers Local 6434
20
21
                                                            BY FAX
22         IN THE UNITED STATES DISTRICT COURT
23           CENTRAL DISTRICT OF CALIFORNIA
24
25 John Ronches,                          CV09-4279 GAF(PJWx)
                                          Case No.
26 as Fiduciary of the Long Term Care Workers Health
   Plan, on behalf of the Plan participants and
27 beneficiaries,                          COMPLAINT
28 and as Trustee of the Long Term Care Workers

                          1

| | |
|---|---|
| Health Trust Fund, on behalf of the Trust and its beneficiaries, | **JURY TRIAL DEMAND** |
| SEIU United Long Term Care Workers Local 6434, as Fiduciary of the Long Term Care Workers Health Plan, on its own behalf, and on behalf of its members, | |
| Plaintiffs, | |
| vs. | |
| Dickerson Employee Benefits, Inc., Tyrone Freeman, and TelaDoc, Inc., | |
| Defendants. | |

Plaintiffs, through their attorneys, by way of a Complaint against Defendants Dickerson Employee Benefits, Inc., Tyrone Freeman, and TelaDoc, Inc. allege as follows:

## INTRODUCTION

1.      This suit arises out of Defendant Dickerson Employee Benefits' and Defendant Tyrone Freeman's two-year-long mismanagement of, and self-dealing with respect to, a union-sponsored health and welfare plan that provides benefits to tens of thousands of workers providing in-home care to California's aged and disabled.    Due to the acts and omissions of the Defendants Dickerson Employee Benefits and Freeman, the Plan purchased

over-priced, inappropriate and/or illegal benefits, was charged excessive and improper commissions, paid money on claims not owed under the Plan terms, and failed to collect sufficient revenue to finance Plan benefits. Defendant TelaDoc aided in the fiduciary breaches of Dickerson Employee Benefits and Freeman, improperly received Plan assets, and engaged in material misrepresentations to induce the Plan to purchase an over-priced, inappropriate and/or illegal benefit service. As a consequence of Defendants' acts and omissions, millions of dollars of Plan assets were wasted, and the Plan was very nearly rendered insolvent. The Plaintiffs, fiduciaries of the Plan, seek to recover these wasted Plan assets and related damages on behalf of the home care workers who are the Plan participants and beneficiaries.

## **JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a) and 29 U.S.C. § 1132(e).

3.   This Court has personal jurisdiction over Defendants Dickerson Employee Benefits, Inc. and Freeman by virtue of their residence in the state of California. This Court has personal jurisdiction over Defendant TelaDoc, Inc. because it conducted substantial business in the state of California by selling and providing the "TelaDoc" program in California to California

residents.

4.    Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2), in that the subject Plan is administered in this district, the breaches of duty herein alleged occurred in this district, and one or more of the Defendants resides or may be found in this district; and pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES AND RELATED ENTITIES

5.    Plaintiff SEIU United Long Term Care Workers Local 6434 ("Local 6434") is a labor union that represents California long term care workers ("LTC workers"). These workers provide in-home care to California's elderly and disabled and are generally compensated through California's Medi-Cal program, as administered by county agencies referred to as In-Home Supportive Services ("IHSS") Public Authorities. Local 6434 is affiliated with the Service Employees International Union ("SEIU" or "International Union"). Local 6434's main offices are located at 2515 Beverly Boulevard, Los Angeles, CA 90057.

6.    Local 6434 sponsors a number of health and welfare benefits that together comprise the Long Term Care Workers Health Plan (the "Plan"). The Plan provides benefits to LTC workers who are either members of Local 6434 or

4

another SEIU affiliate, or are covered by a collective bargaining agreement negotiated by Local 6434 or another SEIU affiliate. At the times relevant to this Complaint, the Plan included voluntary health benefits and dental insurance funded through collectively-bargained contributions from certain IHSS Public Authorities and a premium co-pay from each eligible covered worker in those Counties; voluntary dental insurance funded through a wage deduction from those LTC workers not covered by the health benefits program; and a medical consultation service ("TelaDoc") funded primarily through a special assessment on all Local 6434 members. Local 6434 is a fiduciary by operation of law with respect to the latter two benefit programs operated by the Plan.

7.     The Long Term Care Workers Health Trust Fund ("the Trust") is the funding vehicle through which the Plan funded some of these benefits, including the collectively-bargained health and dental benefits and the TelaDoc service. The Trust is a non-profit trust fund operating in California, structured to comply with the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Trust received money from the IHSS Public Authorities and individual workers, through Local 6434, to fund these benefits. The Trust has its principal place of business at 2515 Beverly Boulevard, Los Angeles, CA 90057.

8.     Plaintiff John Ronches is Trustee of Local 6434 and current sole trustee of

the Trust.   He brings this suit on behalf of the Plan and the Plan's participants and beneficiaries in his representative capacity as fiduciary, and on behalf of the Trust and Trust beneficiaries in his representative capacity as Trustee of the Trust.   Ronches was appointed Trustee of Local 6434 in August 2008 by the President of the International Union, after the SEIU International Union placed Local 6434 under trusteeship due to misconduct and malfeasance by Defendant Freeman.   Ronches thereafter became the sole Trustee of the Trust.

9.   Defendant Dickerson Employee Benefits, Inc. ("DEB") is a California corporation and California-licensed insurance broker, having its principal place of business at 1918 Riverside Drive, Los Angeles, CA 90039.   During the periods of time relevant to this complaint, DEB provided advice, counseling, and administrative services to the Trust and the Plan regarding the Plan's benefit programs, and managed the day-to-day administration of the Plan's benefit programs.   Upon information and belief, DEB exercised control over the management or disposition of Plan assets and had discretionary authority in the administration of the Plan's benefit programs.

10.   Defendant Tyrone Freeman was the President of Local 6434 until August 2008, when Local 6434 was placed under trusteeship by the International Union.   As President of Local 6434, Freeman was primarily responsible for the establishment of the Plan and Trust and for appointing the Trustees of

the Trust.  Freeman was a Trustee of the Trust and the Chair of the Board of Trustees of the Trust until he was replaced by Plaintiff Ronches in September 2008.  He resides in Toluca Lake, California.

11.  Defendant TelaDoc, Inc. ("TelaDoc") is a Texas corporation having its principal place of business at 14160 Dallas Parkway, Suite 750, Dallas, TX, 75254.  TelaDoc sells access to a national network of physicians who diagnose illness, recommend treatment, and prescribe medication over the telephone.  In May 2007, the Trust entered into an agreement with DEB to provide access to TelaDoc as a Plan benefit for Local 6434's membership and certain other Plan participants.

## FACTS

### The Trust and the Plan

12.  Beginning in the 1980's, certain predecessor unions to Local 6434 began making available to their members dental benefits and certain other voluntary benefits, such as vision care.  These benefits were funded through voluntary employee contributions and constituted an employee welfare benefit plan within the meaning of section 3(l) of ERISA, 29 U.S.C. § 1002(l).

13.  In or around 2006, a predecessor union to Local 6434, acting at the direction of Defendant Freeman and upon the advice and counsel of DEB, established

a trust fund from which to fund collectively-bargained employee health benefits and certain other welfare benefits for members of the union. This trust was later renamed to become the current Trust.

14. The terms of the Trust's trust agreement place the Trust under the control of a Board of Trustees with the authority to oversee and manage the Trust and the benefits provided; the President of Local 6434 (Defendant Freeman) served as Chair of that Board. The trust agreement empowered the President to name the remaining Trustees.

15. Defendant Freeman served as the Chair of the Trust's Board of Trustees from the Trust's establishment until he was replaced by Plaintiff Ronches. As President of Local 6434, Freeman was also the named fiduciary of the Trust.

16. Freeman dominated the remaining Trustees, who acted and relied upon his direction.

17. The Plan is sponsored by Local 6434 and consists of all the health care and related welfare benefits provided or made available to members of, or LTC workers represented by, Local 6434, without regard to the source of funding for such benefits, as well as benefits made available to members of affiliated unions through the Trust.

18. Defendant Freeman was removed from office as President of Local 6434 in August 2008, by means of a trusteeship imposed by the International Union

pursuant to Title III of the Labor-Management Reporting and Disclosure Act due to mismanagement and misconduct by Freeman.  The President of the International Union appointed Plaintiff Ronches as the Trustee of Local 6434 at that time.

## Defendant DEB

19.   In August 2006, Defendant Freeman, acting on behalf of the Trust and Plan, executed a contract with DEB to provide specific employee benefit services to the Trust and Plan.  The contract term began retroactively in June 2006.

20.   On information and belief, DEB had provided advice and services to Local 6434 and/or Local 6434's predecessor unions regarding employee benefits prior to that time, had provided advice and services to Local 6434 regarding the establishment, design and operation of the Trust or its predecessors, and had brokered the provision of dental benefits for Plan participants.

21.   Under the contract, DEB promised to provide "administrative and all consulting services necessary and customary for the operation of the Trust and the Plan."

22.   DEB charged the Trust a monthly rate equal to $3.00 per member enrolled in the Plan's health benefit program, plus additional amounts for certain specific services.

23.   DEB held itself out in the contract and generally to be "a professional

Insurance Consultant with extensive experience and expertise in providing consulting services to employee welfare benefit plans." The contract further set out services to be provided by DEB, including, among other things, maintaining an up-to-date employee record file; maintaining procedures necessary for receiving and processing all eligibility and billing records; distributing monthly billing statements and eligibility census records after making appropriate adjustments; co-signing checks; acting as a liaison between the Trust and other third-party administrators and service providers; computing and arranging for payment of insurance premiums; reviewing claims statements from third-party administrators; validating charges; preparing bank transfers; arranging for and interfacing with CPA audits; assuming primary responsibility for reviewing and recommending modifications to the design of the benefit programs; preparing annual estimates of reserve requirements; preparing quarterly experience and utilization reports; preparing cash flow projections and budgets of income, benefit costs, and administration expenses; calculating the financial impact of benefit modifications and eligibility rule changes; calculating rates for benefits for new groups and COBRA premium rates; and assisting the Trustees in evaluating the quality of services provided by service providers.

24.   Plaintiff Ronches terminated the contractual relationship with DEB effective October 27, 2008.

**Plan Assets Lost Due to the Improper "TelaDoc" Service**

25.    In or around March 2007, DEB promoted to Local 6434 and the Trust a

service called "TelaDoc" that DEB portrayed as an appropriate welfare

benefit for the members of Local 6434.

26.    TelaDoc provides a service that permits individuals who are enrolled to

obtain telephone consultations with a physician when the individual's

primary care physician is not available.

27.    California law prohibits physicians from prescribing medicine without a

prior examination, except in narrow circumstances:  when the patient is in an

inpatient facility; the medication is an antibiotic for a sexually transmitted

disease; when the prescribing physician is a designated physician serving in

the absence of the patient's regular physician and the drugs are prescribed

only as necessary to maintain the patient until the return of his regular

physician and in any case no longer than 72 hours; or when the prescribing

physician is a designated physician serving in the absence of the patient's

regular physician, had access to the patient's medical records, and the

prescription is a single refill of a previously prescribed medication.  Cal.

Bus. & Prof. Code § 2242.

28.    A large proportion of Local 6434's membership lacks health insurance and a

primary care physician.

29. From March 2007 through May 2007, DEB promoted the TelaDoc benefit to the Trustees, to Local 6434, and to Local 6434's members, by falsely describing it as an appropriate benefit for workers who otherwise lacked medical care, and through which such workers could obtain prescriptions for medicine by telephone without seeing a doctor.

30. On March 28, 2007, Carl Dickerson, the principal owner of DEB, attended a Meeting of the Trustees and made a presentation in which he falsely promoted the TelaDoc program as an appropriate benefit for individuals who otherwise lacked medical care. Neither Dickerson nor DEB explained to the Trustees the compensation DEB would receive if TelaDoc were to be provided as a Plan benefit.

31. Between March and May 2007, DEB distributed to Freeman and other individuals associated with the Fund and/or Local 6434 a PowerPoint-type presentation touting the benefits of the TelaDoc program. This presentation did not advise the recipients that the program was appropriate only for individuals who have a primary care physician, or that there were any restrictions on the prescription of medicine by TelaDoc doctors. To the contrary, the presentation stated that 70% of TelaDoc consults resulted in the prescription of medication. DEB knew or should have known that Freeman, the Trustees, or Local 6434 would use this presentation when explaining the TelaDoc program to the Local 6434 Executive Board, Plan participants and

other members of Local 6434, and intended the presentation to be used for that purpose.  This presentation was disseminated to the Local 6434 Executive Board by either DEB or Freeman in May of 2007.  Upon information and belief, it was also disseminated to Plan participants and other members of Local 6434 in the spring of 2007.

32.  DEB and Freeman further created and distributed to the Plan participants and members of Local 6434 a flyer, produced in both English and Spanish, which stated that TelaDoc is "[a]vailable to workers even if they are not eligible for a medical plan" and that "TelaDoc consulting physicians recommend treatment and prescribe medication (when appropriate) over the telephone 24 hours a day, 365 days a year." This flyer did not advise the recipients that the program was appropriate only for individuals who have a primary care physician, or that there were any restrictions on the prescription of medicine by TelaDoc doctors.

33.  DEB's communications to the Trust and the Local also misrepresented the TelaDoc service because these communications failed to alert the Trust and the Local to numerous other factors that would have made the TelaDoc program less appealing, including that members would be required to complete a medical history in advance and TelaDoc would maintain a computerized record of their medical history, that TelaDoc doctors would not respond to calls regarding children under the age of twelve, and that

there would be additional fees for completing medical histories over the phone, for enrolling spouses or children, and for using the service more than once in a year.

34.   Defendant Freeman also failed to inform the remaining Trustees or Plan participants of these facts that would make the TelaDoc service less appealing, and did not make adequate inquiry into whether TelaDoc was an appropriate benefit for Plan participants or was properly priced to the Trust.

35.   Upon information and belief, TelaDoc was aware of, assisted in, and/or approved DEB's misleading descriptions of the TelaDoc service.  Upon information and belief, TelaDoc either created or approved much of the false or misleading information provided to the Trustees and Plan participants, including the PowerPoint-type presentation and the flyer distributed to the Plan participants and Local 6434 members.

36.   DEB and TelaDoc made or approved these material misrepresentations and omissions in order to induce the Trustees and Local 6434 to approve the purchase of the TelaDoc service for Local 6434's members.

37.   In May 2007, upon motion by Defendant Freeman, the Executive Board of Local 6434 passed a resolution to submit to its membership the question of whether to provide the TelaDoc service as a member benefit to be financed through a mandatory monthly assessment on each member of Local 6434.

38.   Upon information and belief, Defendant Freeman, with the assistance,

14

knowledge and/or participation of Defendants DEB and TelaDoc, conveyed the misrepresentations made by DEB and TelaDoc regarding the TelaDoc service to Local 6434's Executive Board and membership.

39.   The union ballot for the assessment vote was labeled "Access to a Medical Doctor for Every Worker & their Family."  The ballot informed the membership (in both English and Spanish) that "[f]or the many [workers] that are without health coverage, it will insure access to a medical doctor" and that "[t]he complete funding for this benefit will be provided through a modest monthly assessment . . . ."  This ballot was put to a membership vote and approved.

40.   On May 24, 2007, the Trustees caused the Trust to enter into an addendum to the Trust's agreement with DEB under which DEB agreed to provide the TelaDoc benefit to the Trust for Local 6434 members at a cost of $4.25 per member per month.  The addendum states that included in this membership fee is one "free" consultation with a TelaDoc physician per member per year; members would pay an additional amount for any further consultations.  Between June and August, 2007, the Trust purchased the TelaDoc service for Plan participants in Ventura and Del Norte Counties.

41.   In or around September 2007, Local 6434 instituted the mandatory assessment on its approximately 156,000 members.  The monthly assessment was collected by the State of California from wages earned by

Local 6434 members and transmitted to Local 6434.

42.     Over the initial nine-month period covering payments for September 2007 to May 2008, the Trust received from Local 6434 and transferred to DEB approximately $650,000 per month, or more than $5.8 million over this nine-month period for the TelaDoc service.  The Trust paid additional sums to cover the cost of TelaDoc for Plan participants in Del Norte County, who were Plan participants but not members of Local 6434.

43.     While the Trust remitted to DEB $4.25 per member per month for the TelaDoc service, DEB itself paid TelaDoc only a one-time fee of $.92 for each participant, plus $.69 per participant each month, plus $35.00 each time a participant used the telephone consult service.  DEB did not disclose its financial arrangement with TelaDoc when it recommended the Plan approve TelaDoc as a Plan benefit.  Upon information and belief, this arrangement resulted in DEB paying TelaDoc a small fraction of the amount it received from the Plan.

44.     The Local 6434 membership and other Plan participants made very little actual use of the TelaDoc service.  On information and belief, they actually initiated fewer than 2000 TelaDoc telephone consultations during the entire 13-month period the service was in effect, an annual utilization rate barely exceeding 1%.  The fees charged by DEB for this period amounted to nearly $8.7 million, or an average cost of over $4,000 per telephone call.

45.  Neither DEB nor Freeman made any effort to project members' utilization rate prior to recommending the TelaDoc service to Local 6434 members or determining the appropriate price for the benefit.

46.  Upon information and belief, various members of Local 6434 complained to Defendant Freeman that the TelaDoc benefit was of little use and not worth the cost of the mandatory assessment upon members.

47.  Despite the low utilization rate and high cost of the TelaDoc service, neither Freeman nor DEB reviewed or reconsidered the decision to provide the TelaDoc service under the terms set by the DEB contract with the Trust.

48.  Upon information and belief, DEB determined the amount which the Plan paid to DEB and the structure of the payment agreement between the Plan and DEB for the TelaDoc service, and recommended this payment amount and structure to the Plan.

49.  Upon information and belief, TelaDoc was aware that DEB was charging the Plan a much higher rate than TelaDoc was charging DEB.

50.  DEB never revealed to the Board of Trustees or to Local 6434 the terms of its contract with TelaDoc.

51.  Defendant Freeman either failed to exercise due diligence to require DEB to disclose the nature of its arrangements or the amount of compensation DEB was receiving in connection with the TelaDoc service, or failed to disclose his knowledge of the DEB-TelaDoc arrangement to the other Trustees.

52.   In September 2008, Local 6434 terminated the mandatory assessment and Plaintiff Ronches terminated the Trust's contract with DEB to provide the TelaDoc service to Local 6434 members and other Plan participants.

53.   Millions of dollars of plan assets were wasted on the TelaDoc program, and DEB and TelaDoc were substantially enriched as a result of the inappropriate service that they deceptively promoted to the Plan and to Local 6434.

### DEB's Excessive Compensation and Conversion of Plan Assets with Respect to the Western Dental Benefit

54.   Upon information and belief, DEB recommended that Local 6434, the Plan, and/or the Trust enter into an arrangement or arrangements with Western Dental Services, Inc. ("Western Dental") to provide insured dental benefits to LTC workers covered under arrangements with IHSS Public Authorities and to other members of Local 6434 through a voluntary payroll deduction, and DEB negotiated for such an agreement.

55.   DEB received a commission of approximately 14% of the amount that the Plan paid Western Dental for providing the dental benefits.  The amount of the commission was not disclosed to the Trustees.  For the 2007-08 Plan year alone, this commission amounted to over $800,000.

56.   Upon information and belief, DEB did not conduct a competitive bid process

on behalf of the Plan before recommending selection of Western Dental.

57. Although DEB's contract with the Trust required it to provide the Trust with quarterly statements showing the receipt of commissions, upon information and belief, DEB did not advise the Trust of the amount of its commission from Western Dental and did not advise the Trust that its compensation was higher than the accepted rate of compensation in the industry.

58. The commission that DEB received on the Western Dental plan was excessive and in violation of DEB's fiduciary duties to the Plan. DEB was able to obscure its excessive fees by instructing the Plan to remit the Western Dental premiums to an account titled "Western Dental"; this account was in fact controlled by DEB, and DEB forwarded to Western Dental a portion of these Plan assets for payment of the premium.

59. Defendant Freeman failed to exercise due diligence in agreeing to the proposed arrangements with Western Dental without independently inquiring about DEB's compensation and without considering or comparing alternative arrangements with other dental service providers. Freeman, on information and belief, relied on DEB's implicit or explicit representations regarding the appropriateness of the benefit and of DEB's compensation.

60. The Trust terminated its contract with DEB on October 27, 2008, but on November 24, 2008, Local 6434 erroneously wire transferred $927,774.66 in Plan assets intended for payment of premiums owed to Western Dental, not

realizing that the account labeled "Western Dental" was actually held by DEB and not realizing that the monthly premiums paid to Western Dental had included a commission for DEB.

61.   DEB unlawfully retained $129,888.45 of that erroneous November 24, 2008 wire transfer as "commission" on those premiums, although its contract to provide services had been previously terminated.  DEB has refused to return those Plan assets to the Plan, despite repeated demands to do so.

### Collectively-Bargained Health Benefits Provided to Plan Participants in Certain Counties Through the Trust

62.   Among the Plan's benefits programs is a health benefit program that provides medical benefits to certain LTC workers in counties where the IHSS Public Authority has agreed, through collective bargaining with Local 6434 or another SEIU-affiliated union, to contribute to these health benefits. The program is a voluntary benefit; eligible LTC workers that wish to participate must enroll and agree to a monthly contribution, which is deducted from their wages.  In order to be eligible for coverage, a LTC worker must work a specified number of hours.

63.   During all relevant periods, the Plan was "self insured" with respect to the medical benefits provided, meaning that the Plan did not purchase any insurance policies or contracts to cover these claims, but instead paid claims

directly out of Plan assets. The Plan therefore bore the entire risk that the promised benefits would exceed the assets and income available to pay for them.

64. Because these Plan-provided medical benefits are "self-insured," the Plan must project the potential impact of current decisions on the actual and expected resources of the Trust, taking into account anticipated future contributions to the Plan and anticipated future claims for benefits, as well as administrative expenses. It is not possible to make such decisions prudently without expert actuarial and financial studies and advice.

65. During the relevant time periods, the Plan fiduciaries, including Freeman and DEB, lacked the information and advice necessary to adequately consider the effect of providing Plan benefits at the contemplated rate of contributions.

66. As a result, the Plan fiduciaries made decisions regarding what benefits the Plan could provide, and at what cost to participants and participating employers, that were imprudent and caused the Plan to suffer financial losses.

67. Freeman and DEB, as consultants to the Plan and Trust, knew or should have known that these decisions regarding the administration of the Plan would increase the risk of losses to the Plan and jeopardize the Plan's ability to provide such additional benefits, as well as benefits that the Plan was

already committed to provide.

68.    Freeman and DEB knew or should have known that it was not reasonable or appropriate to make these decisions without obtaining adequate actuarial, financial, or utilization studies to support such decisions.  A prudent fiduciary of a self-funded welfare benefit plan would have obtained such information and would have taken it into account in making such decisions.

69.    An employee benefits consultant exercising reasonable care would have realized that such information was necessary and would have advised the Trustees accordingly.

70.    During the relevant time periods, DEB failed to provide the Trustees with the advice and counsel necessary to meaningfully evaluate the alternatives available to them and the potential consequences of the Trustees' decisions regarding pricing of benefits and coverage of LTC workers.

71.    Upon information and belief, Freeman, upon the advice and encouragement of DEB, chose to ignore actuarial studies that indicated that the Plan's anticipated revenue could not support its anticipated expenses.

72.    In place of these studies, DEB sought out and obtained alternative actuarial studies with the goal of supporting Freeman's desired outcome rather than obtaining objective analysis; DEB located the actuaries, contracted with them, provided the predicate assumptions and parameters for the analysis, and reported the results to the Trustees.  DEB failed to act prudently or with

the reasonable care that should be exercised by an employee benefits consultant when obtaining and presenting these reports.

73.   DEB's actions and inactions caused the Plan to make commitments to pay benefits on terms and conditions that were financially beyond its means either by advising the Trustees to adopt benefits that its funding could not support, by failing in DEB's duty to give the Trustees appropriate advice regarding the potential consequences of such actions, and/or by giving the Trustees inadequate, incomplete, and inaccurate information regarding the status of the Plan with respect to revenue and expenses.

74.   DEB's failure to provide accurate and reliable information and/or prudent advice to the Trustees caused or contributed to the Plan's losses.

## Improper Administration of Medical Benefit Program

75.   In connection with providing advice and implementing the setup and operations of the Trust, DEB recommended that the Trust hire a third-party claims administrator to provide claims administration services with respect to medical benefits.   DEB researched possible administrators for this purpose and specifically recommended that the Trust hire Physicians Care Insurance Services, Inc. ("PCIS") for that purpose, based upon DEB's review of PCIS's qualifications.

76.   Freeman and DEB failed to make adequate inquiry into PCIS's ability and

experience in administering claims for a health plan of this type, and the systems that PCIS had in place, or planned to implement, in order to process claims for the Plan.  PCIS lacked the necessary ability, experience, and/or systems to properly process claims for the Plan.

77.  Based upon DEB's advice and recommendation, the Trustees hired PCIS to provide administrative services to the Trust.

78.  Defendant Freeman executed a contract with PCIS on behalf of the Trust in or about June 2006, under which PCIS promised to provide "all administrative services necessary and customary for the administrative operation of the Trust and Plan."

79.  Under the contract between PCIS and the Trust, PCIS received $13.00 per eligible participant per month for its services.  Effective July 1, 2008, this compensation was increased to $14.90 per participant per month, with an additional $2.50 per participant per month to administer vision benefits.

80.  DEB was responsible for overseeing the work of PCIS, the claims administrator which DEB had recommended to the Plan.

81.  Defendant Freeman, as Plan fiduciary, also had a fiduciary responsibility to oversee the work of PCIS.

82.  Upon information and belief, PCIS improperly processed a large number of claims by failing to follow the rules of the Plan, including, *inter alia*, failing to apply the Plan's deductibles, co-pays, and maximum limit on claims.

Upon information and belief, these errors wasted over $600,000 in Plan assets.

83.   PCIS failed to establish and to apply appropriate processes for processing and paying benefit claims on a timely basis, and, as result, was extremely slow in processing claims.

84.   Due to PCIS's untimely and erroneous processing of claims and general failure to follow proper claims administration practices, the Trustees and retained actuaries received periodic reports on the Plan's financial status and claims status that were inadequate and misleading for purposes of determining either future contribution rates needed to sustain the Fund or the benefits that the Plan's current funding could support, contributing to the imprudent fiduciary decisions discussed *supra* in ¶¶ 62-74.

85.   DEB and Freeman failed to oversee prudently and adequately PCIS's claims processing and general performance.

86.   DEB also failed to perform its contractual and fiduciary duties with respect to verifying that the Plan was receiving required contributions and that individuals receiving benefits were in fact eligible for benefits according to the terms of the Plan, which would have included verifying that an individual making a claim had worked the requisite hours, was properly enrolled and was paying the employee contributions required under the Plan.

87.   Freeman also failed in his fiduciary duty to ensure that the Plan was

receiving required contributions and that there were adequate procedures to verify that individuals receiving benefits were in fact eligible for benefits according to the terms of the Plan.

88.   As a result of DEB's and Freeman's failure to do so, PCIS and DEB regularly billed the Plan for per capita administrative fees for individuals that were not in fact eligible for the Plan.

89.   As a result of DEB's and Freeman's failings, the Plan also paid claims for individuals who were not eligible for benefits.  A substantial amount of Plan assets were wasted on claims paid for non-eligible individuals.

90.   As a result of DEB's and Freeman's failings, the Plan also failed to collect premium co-payments from hundreds of plan participants each month, costing the Plan substantial amounts in lost co-payments.

91.   DEB's recommendation of PCIS, its failure to properly oversee PCIS, and its failure to otherwise properly perform its role as Administrator has also forced the Plan to hire auditors to identify errors in claims processing and reconstruct the Plan's records, to engage in arbitration with PCIS in an attempt to recover Plan assets, and possibly to take other steps in order to correct errors in Plan administration, further wasting Plan assets.

92.   Upon information and belief, during the duration of its contract with the Trust, DEB committed other related acts that were imprudent or in breach of its contracts with the Trust that violated applicable professional standards

and/or that were negligent and caused or contributed to Plan losses.

## CLAIMS UNDER ERISA

### FIRST COUNT
### Breaches of Fiduciary Duties Under ERISA
### Plaintiff Ronches and Local 6434 against Defendants Freeman and DEB

93.   Paragraphs 1-92 are incorporated by reference as though fully set forth herein.

94.   From the Plan's inception in 2006 until August 2008, Defendant Tyrone Freeman served as a Trustee of the Trust and named fiduciary of the Trust. Freeman was also a fiduciary with respect to all Plan benefits because he exercised authority or control over the management or disposition of all Plan assets, exercised discretionary control over the management of the Plan, and had discretionary authority or responsibility in the administration of the Plan.

95.   From the Plan's inception in 2006 through October 2008, DEB served as a consultant to and administrator for the Plan.  In that capacity, DEB exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of Plan assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan, and therefore was a fiduciary of the Plan pursuant to ERISA.

96.  DEB exercised authority or control respecting the management and disposition of Plan assets that were intended to be used for payment of the TelaDoc benefit and the Western Dental benefit, and was a fiduciary under ERISA with respect to those Plan assets.

97.  Defendant Freeman and DEB owed the Trust and Plan participants and beneficiaries fiduciary duties under ERISA § 404, including, inter alia, a duty to discharge their duties with respect to the Trust and Plan solely in the interest of the participants and beneficiaries, and to use the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

98.  Defendant Freeman breached his fiduciary duties by administering the Trust and Plan negligently and not solely in the interests of the Trust and Plan participants and beneficiaries, including inter alia: failing to oversee the activities of the third-party administrators; making commitments to provide benefits that the Plan's funding could not support without adequate investigation or professional advice; failing to take adequate account of adverse actuarial reports; neglecting to request additional actuarial reports to ensure the Plan's fiscal soundness going forward; failing to ensure that the Plan or PCIS had a process to maintain accurate eligibility records and pay

benefits only to eligible persons; expending Plan assets on services that were inappropriate for the Plan participants, overpriced and/or illegal; and failing to make adequate inquiry into the profit made by DEB in connection with the Western Dental and TelaDoc contracts.

99.    DEB breached its fiduciary duties by administering the Trust and Plan negligently and not solely in the interests of the Trust and Plan participants and beneficiaries, including inter alia: failing to oversee, call attention to, and/or correct PCIS's mismanagement of benefit claims; promoting the provision of benefits that could not be supported by the Plan's revenue; rendering or acquiescing in misleading reports of the Trust's financial status, either negligently or deliberately; failing to take adequate account of adverse actuarial reports; neglecting to request additional actuarial reports to ensure the Plan's fiscal soundness going forward; failing to ensure that the Plan or PCIS had an adequate process was established to maintain accurate eligibility records and pay benefits only to eligible persons; recommending and facilitating the purchase of services that were inappropriate for the Plan participants, overpriced and/or illegal; failing to disclose the terms of its Western Dental and TelaDoc compensation arrangements to the Trustees; receiving excessive compensation through the Western Dental and TelaDoc arrangements; and providing negligently or deliberately misleading advice to the Trust and Plan in all aspects of the consulting relationship.

100. DEB also breached its fiduciary duties to the Trust and Plan by failing to act solely in the interest of the Plan participants and beneficiaries and by self-dealing in selecting, recommending and promoting benefit programs to the Trust; in seeking to maximize the number of participants covered by the Plan without respect to the Plan's financial stability; and in structuring its own excessive compensation.

101. As a direct and proximate result of these breaches, the Trust and Plan have suffered losses, its assets have been improperly wasted and transferred to third parties including DEB, PCIS and TelaDoc, and its ability to provide the promised benefits has been compromised.

**SECOND COUNT**
**Prohibited Transactions Under ERISA § 406(a)**
**Plaintiffs Ronches and Local 6434 against**
**Defendants Freeman, DEB and TelaDoc**

102. Paragraphs 1-101 are incorporated by reference as though fully set forth herein.

103. Defendant DEB was a "party in interest" to the Plan, in addition to being a fiduciary to the Plan. *See* 29 U.S.C. § 1002(14)(A) & (B).

104. Defendant TelaDoc was also a "party in interest" to the Plan.

105. ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits a fiduciary from causing a plan to engage in a transaction where the fiduciary knows or should know that the transaction constitutes a direct or indirect furnishing of services

30

between the plan and a party in interest, or transfer to, or use by or for the benefit of a party in interest, of any assets of the plan, except as provided in § 408, 29 U.S.C. §1108.

106.   Defendant Freeman, as a fiduciary to the Plan and Trust, caused the Plan to engage in a transaction prohibited by § 406(a) by transferring Plan assets to DEB under the contract for services with DEB and TelaDoc addendum thereto, and for payment of the Western Dental insurance premiums; Freeman knew or should have known that these transactions constituted a direct or indirect furnishing of services between the Plan and DEB and/or TelaDoc, or transfer to, or use by or for the benefit of DEB and/or TelaDoc, of assets of the Plan.

107.   Defendant DEB, as a fiduciary to the Plan and Trust, caused the Plan to engage in a transaction prohibited by § 406(a) by transferring Plan assets to TelaDoc; DEB knew or should known that these transactions constituted a direct or indirect furnishing of services between the Plan and TelaDoc, or transfer to, or use by or for the benefit of TelaDoc, of assets of the Plan.

108.   These transactions were not subject to any exemption under ERISA § 408, 29 U.S.C. §1108.

109.   Defendants DEB and TelaDoc knew or should have known of the circumstances rendering the transactions prohibited under ERISA and are liable to the Plan for restitution as a party in interest.

31

110. PCIS was also a "party in interest" to the Plan.

111. The Trust's transfer of funds to PCIS was a prohibited transaction not subject to any exemption under § 408, 29 U.S.C. § 1108.

112. As a direct and proximate result of these prohibited transactions, the Plan has been substantially damaged, its money reserves depleted and improperly transferred to DEB and PCIS and its ability to provide the promised benefits compromised.

## THIRD COUNT
### Prohibited Transactions Under ERISA § 406(b)
### Plaintiffs Ronches and Local 6434 Against Defendants Freeman and DEB

113. Paragraphs 1-112 are incorporated by reference as though fully set forth herein.

114. ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits a fiduciary from dealing with plan assets in his own interest or for his own account, acting in any transaction involving the plan on behalf of a party whose interests are adverse to the plan, or receiving any consideration from any party dealing with such plan in connection with a transaction involving the assets of the plan.

115. During the course of collective bargaining with employers, Defendant Freeman engaged in § 406(b) prohibited transactions by agreeing to expand Plan coverage without receiving sufficient financial commitments from

32

employers, thus dealing with Plan assets in his own interest for the purpose of furthering his personal interest in expanding or consolidating his political power as Union president.

116. Defendant DEB, as fiduciary to the Plan, engaged in § 406(b) prohibited transactions by dealing with Plan assets in its own interest in order to profit from the TelaDoc and Western Dental contracts and by receiving consideration for its personal account from Western Dental and TelaDoc in connection with transactions involving the assets of the Plan.

## CLAIMS UNDER CALIFORNIA LAW

### FOURTH COUNT
### Breach of Contract
### Plaintiff Ronches on behalf of the Trust against Defendant DEB

117. Paragraphs 1-92 are incorporated by reference as though fully set forth herein.

118. On August 29, 2006, the Trust executed a contract with DEB for the provision of employee benefit consulting services.

119. Article 2.2 of the contract obligated DEB to follow a professional standard of performance: "DEB will be liable for errors where it can be demonstrated that DEB did not exercise reasonable care and that it did not follow generally accepted practices utilized by firms or organizations providing similar consulting/administrative services to employee benefit trusts."

120. The Trust paid DEB monthly from August 2006 to August 2008 for its

services, per article 3.1 and schedule 1.2 of the contract.

120. After becoming Trustee of the Fund, Plaintiff Ronches concluded that DEB was in breach of its contractual duties and possibly had been in breach of its contractual duties during the entire duration of the contract, and terminated the contract effective October 27, 2008.

121. DEB breached the standard of care set forth in Article 2.2 of its contract, as well as specific duties set forth in Schedule 1.1 to the contract.

122. During the course of the contractual relationship between DEB and the Trust, DEB's contractual breaches included, but were not limited to: failing to oversee, call attention to, and correct PCIS' mismanagement of benefit claims; failing to validate charges from PCIS; failing to follow generally established practices by promoting the provision of benefits that could not be supported by the Plan's revenue; rendering or acquiescing in misleading reports on the Trust's financial status; failing to take adequate account of actuarial reports; neglecting to request additional actuarial analyses to ensure the Trust's fiscal soundness going forward; failing to ensure that an adequate process was established to maintain accurate eligibility records and pay benefits only to eligible persons; recommending and facilitating the purchase of services that were inappropriate for the Plan participants, overpriced and/or illegal; failing to disclose the terms of its Western Dental and TelaDoc compensation arrangements to the Trustees; failing to follow

generally accepted practices in selecting, recommending and receiving

compensation from providers; failing to prepare annual reserve requirements

on the self-insured benefits provided by the Trust; incorrectly calculating the

financial impact of benefit modifications and eligibility rule changes, the

rate for new groups added to the Plan, and COBRA premium rates; and

providing negligent or deliberately misleading advice to the Trust in all

aspects of the consulting relationship.

123.   As a result of DEB's breaches of contract, the Plan, through the Trust, paid

benefits to ineligible LTC workers, failed to charge a price for its benefits

that adequately covered the cost of providing those benefits, had its fiscal

soundness compromised, was forced to expend substantial resources to bring

its books into compliance with general accounting standards, wasted Trust

assets in paying substantial fees to DEB for inadequate work and/or

unnecessary services, and wasted substantial Trust assets for an overpriced,

inappropriate and illegal service, and suffered other damages as well.


**FIFTH COUNT**
**Professional Negligence**
**Plaintiff Ronches on Behalf of the Trust and Plan against Defendant DEB**

124.   Paragraphs 1-92 are incorporated by reference as though fully set forth

herein.

125.   During all time periods relevant to this Complaint, DEB was a licensed

35

insurance broker in California.  Besides providing professional brokerage services, DEB also held itself out as a professional employee benefits consultant.

126.  DEB was retained by the Trust pursuant to a written contract.

127.  In performing its consulting, brokerage, and administrative services, DEB had a duty to exercise that degree of skill, diligence, and professional care possessed and customarily exercised in the professions of employee benefits consulting, brokerage, and health plan administration.

128.  The Plan and Trust relied upon DEB to perform these services with the customary degree of skill, diligence, and professional care.

129.  DEB did not perform its duties in accordance with these general professional standards.

130.  Due in part to DEB's failure to advise the Trustees of the financial situation of the Plan and its failure to disclose other pertinent information, including its compensation arrangements with TelaDoc and Western Dental, DEB's negligence was not discovered until after Plaintiff Ronches took over as Trustee in September 2008 and commissioned audits of the Trust's finances and claims.  The full extent of DEB's negligence, and the resulting harm to the Plan, is still not fully known.

131.  DEB's deviations from professional standards included, but were not limited to: failing to oversee, call attention to, and correct PCIS' various failures;

36

failing to follow generally established practices by promoting the provision of benefits that could not be supported by the Plan's revenue; rendering or acquiescing in misleading reports on the Trust's financial status; failing to take adequate account of actuarial reports; neglecting to request additional actuarial analysis to ensure the Trust's fiscal soundness going forward; failing to ensure that an adequate process was established to maintain accurate eligibility records and pay benefits only to eligible persons; recommending and facilitating the purchase of services that were inappropriate for the Plan participants, overpriced and/or illegal; failing to follow generally accepted practices in selecting, recommending and receiving compensation from providers; failing to prepare annual reserve requirements on the self-insured benefits provided by the Trust; incorrectly calculating the financial impact of benefit modifications and eligibility rule changes, the rate for new groups added to the Plan, and COBRA premium rates; and providing negligent or deliberately misleading advice to the Trustees in all aspects of the consulting relationship.

132.    As a direct and proximate result of DEB's failure to perform its duties and provide its services in accordance with professional standards, the Plan paid benefits it did not owe, failed to collect contributions that would adequately support the benefits it obligated itself to provide, purchased inappropriate or overpriced services, had its fiscal soundness compromised, was forced to

expend substantial resources to bring its books into compliance with general accounting standards, wasted Plan assets in payment of substantial fees for negligent work, and suffered other damages as well.

### SIXTH COUNT
**Fraudulent or Negligent Misrepresentation -- TelaDoc Contract**
**Plaintiffs Ronches and Local 6434 against DEB and TelaDoc**

133.   Paragraphs 1-92 are incorporated by reference as though fully set forth herein.

134.   DEB and TelaDoc, or their agents, fraudulently represented, or negligently misrepresented, the TelaDoc program to be an appropriate and lawful service for workers who did not otherwise have access to a physician, failed to disclose that this program was not an appropriate or lawful service for workers who did not otherwise have access to a physician, failed to disclose material limitations on the TelaDoc doctors' ability to provide prescriptions, and made material misrepresentations regarding the costs and benefits of the TelaDoc service.

135.   DEB and TelaDoc knew or should have known that the TelaDoc program was not a lawful or appropriate service for California workers who did not otherwise have access to a physician, or had no reasonable grounds for believing that the TelaDoc program was a lawful or appropriate service for these workers.

136.   DEB and TelaDoc made these representations to the Trust with the knowledge and intent that they would be conveyed to Local 6434's leadership and members.  DEB and TelaDoc made those false representations, or failed to disclose the truth, with the intention that the representations would induce the members and leadership of Local 6434 to agree to an assessment on the Local 6434 members and induce the Trust to enter into a contract for the TelaDoc program with DEB.

137.   DEB and TelaDoc benefited financially from the misrepresentations and omissions.

138.   The Trust and Local 6434 justifiably relied on the representations that the TelaDoc program would be an appropriate and lawful service for Local 6434 members, and that the cost of the service was reasonable given the stated benefits of the service when they approved the assessment and the contract for TelaDoc and when they continued to pay for the TelaDoc service.

139.   Due to the misrepresentations of DEB and TelaDoc, the Trust and Local 6434 did not discover until after the Trusteeship was imposed in August 2008 that TelaDoc was not an appropriate or lawful service for Local 6434 members, that there were material limitations on the TelaDoc doctors' ability to provide prescriptions, and that the costs and benefits of the TelaDoc service were not as initially represented them.

140.   Local 6434, its members, and the Trust suffered damages by entering into

39

and maintaining the TelaDoc service contract.

**SEVENTH COUNT**
**Conversion**
**Plaintiff Ronches Against Defendant DEB**

141.   Paragraphs 1-92 are incorporated by reference as though fully set forth

herein.

142.   The funds that were erroneously wire-transferred on November 24, 2007 to

the DEB-held account labeled "Western Dental" and intended for payment

of the Western Dental premium were Plan assets.

143.   Defendant DEB wrongfully converted $129,888.45 in Plan assets by

refusing to return those funds to the Plan.

144.   The Plan has been damaged by this conversion.

**EIGHTH COUNT**
**Action for Rescission of TelaDoc Contract Addendum**
**Plaintiff Ronches against DEB**

145.   Paragraphs 1-92 are incorporated by reference as though fully set forth

herein.

146.   The contract Addendum which the Trust and DEB executed on May 24,

2007, to provide the TelaDoc program to Local 6434 members had a

purpose that was illegal under California law, Cal. Bus. & Prof. Code §

2242(b), and/or contrary to California public policy, in that many Local 6434 members, and many of those who applied for, and/or used, the subscription service, lacked a primary care physician, and prescription drugs were made available for periods longer than 72 hours even though the TelaDoc doctors did not have access to the patients' medical records and/or even though the prescribed drugs had not previously been prescribed by the member's primary care physician.

147.  The Trust has been harmed by paying for this improper service and the public policy of California has been contravened.

148.  The Trust is entitled to rescission of the Addendum with DEB for TelaDoc services and restitution of money paid to DEB under the contract Addendum.

### NINTH COUNT
**Fiduciary Breach Under California Trust Law**
**Plaintiff Ronches on Behalf of the Trust against Defendants Freeman**

149.  Paragraphs 1-92 are incorporated by reference as though fully set forth herein.

150.  If and to the extent that any portion of the Plan is exempt from ERISA regulation, California trust law governs the duties of the Defendants and their breaches of those duties with respect to those benefits.

151.  From 2006 until August 2008, Defendant Tyrone Freeman served as a

41

Trustee of the Trust and named fiduciary of the Trust.

152. Defendant Freeman breached his fiduciary duties of prudence, loyalty, and impartiality to the Trust, including inter alia: failing to oversee the activities of the third-party administrators; making commitments to provide benefits that the Plan's funding could not support without adequate investigation or professional advice; failing to take adequate account of adverse actuarial reports; neglecting to request additional actuarial reports to ensure the Plan's fiscal soundness going forward; failing to ensure that the Trust or PCIS had a process to maintain accurate eligibility records and pay benefits only to eligible persons; expending Trust assets on services that were inappropriate for the Plan participants, overpriced and/or illegal; and failing to make adequate inquiry into the profit made by DEB in connection with the Western Dental and TelaDoc contracts.

153. Defendant Freeman also breached his duty to prudently select and monitor agents to whom Trust administration duties were delegated.

154. As a direct and proximate result of the fiduciary breaches alleged here, the Plan has been substantially damaged.

**TENTH COUNT**
**Aiding and Abetting Fiduciary Breach Under California Law**
**Plaintiff Ronches on Behalf of the Trust**
**against Defendants DEB and TelaDoc**

155. Paragraphs 1-92, 149-154 are incorporated by reference as though fully set forth herein.

156. Defendant DEB worked very closely with the Trustees in all aspects of Trust management and administration, recommending and promoting courses of action and service providers to the Trustees, and assisting the Trustees in implementing all Plan decisions.

157. While performing services for the Trustees, DEB knew that Freeman was a Trustee and that many of Freeman's acts constituted breaches of his fiduciary duties as Trustee, and DEB knowingly aided, assisted, enabled, and/or encouraged Freeman's fiduciary breaches.

158. Upon information and belief, TelaDoc knew that Freeman was promoting the TelaDoc program to Local 6434's leadership and members as a benefit for individuals without access to a primary care physician; TelaDoc knew that this benefit was inappropriate for the Local 6434 members, would violate California law if used in the manner it was being promoted to those members; and knew that DEB was overcharging the Trust for this service.

159. TelaDoc knew or should have known that it would be a fiduciary breach for Freeman to promote the TelaDoc program to Local 6434 in the manner

43

stated in ¶ 156 and to enter into and maintain the TelaDoc contract with DEB, and TelaDoc aided, assisted, enabled, and/or encouraged these fiduciary breaches.

160.   As a direct and proximate result of the aiding and abetting alleged here, the Trust has been substantially damaged.

WHEREFORE, Plaintiff Ronches on behalf of the Trust and Plan, and Local 6434 on its own behalf and on behalf of its members, demand judgment against all Defendants as follows:

    a.   that the Defendants disgorge all profits made through their fiduciary breaches;

    b.   that Defendant DEB make restitution of all Plan assets improperly transferred to it and disgorge all profits earned through those transferred assets;

    c.   that DEB make restitution of money paid on the TelaDoc contract that was unlawful and contrary to public policy;

    d.   that the Defendants make whole the Plan for all funds expended as a result of their fiduciary breaches; including benefits improperly paid, expenses of auditing the Plan, expenses of arbitration with PCIS, and administrative costs of correcting claims administration errors;

    e.   that DEB make restitution of payments made by the Plan to DEB in

those instances where DEB failed to perform its duties under its

contracts;

f.  that Defendants restore double the value of all wrongfully taken

property, in accordance with Cal. Prob. Code § 859;

g.  compensatory damages;

h.  consequential damages;

i.  punitive damages;

j.  expectation damages;

k.  reliance damages;

l.  prejudgment interest on all money for which disgorgement or

restitution is ordered for Plaintiffs;

m. the costs of this action;

n.  reasonable attorneys' fees and expenses; and

o.  such other and further relief as the Court deems just and equitable

under the circumstances.

Dated:  June 15, 2009

Julia Penny Clark*
Robert Alexander*
Kathleen M. Keller*
Bredhoff & Kaiser P.L.L.C.
805 Fifteenth St., N.W., Suite 1000
Washington, D.C.  20005-2207
(202) 842-2600

1

2           Glenn Rothner (CSB No. 67353)
            Ellen Greenstone (CSB No. 66022)

3           Rothner, Segall, Greenstone &
            Leheny

4           510 South Marengo Ave.

5           Pasadena, CA  91101-3115
            (626) 796-7555

6

7           Attorneys for Plaintiff John Ronches

8           Scott A. Kronland (CSB No. 171693)

9           Altshuler Berzon LLP
            177 Post Street, Suite 300

10          San Francisco, CA 94108

11          (415) 421-7151

12          Attorney for Plaintiff SEIU United

13          Long Term Care Workers Local 6434

14

15

16  *Applications for admission to practice pro hac vice to be submitted

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV09- 4279 GAF (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
John Ronches
SEIU United Long Term Care Workers Local 6434

**DEFENDANTS**
Dickerson Employee Benefits, Inc.,
Tyrone Freeman, and
TelaDoc, Inc.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
See attached

Attorneys (If Known)

BY FAX

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION** under F.R.C.P. 23: ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be determined at trial.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
ERISA, 29 U.S.C. § 1101 et seq.   Complaint for return of Plan assets lost due to fiduciary breach and prohibited transactions.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☒ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | | ☐ 443 Housing/Accommodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number: **CV09-4279 GAF(PJWx)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒No  ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒No  ☐ Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Texas |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date June 15, 2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

ATTACHMENT TO CIVIL COVER SHEET

**I (b) Attorneys for Plaintiffs**

Julia Penny Clark
Robert Alexander
Kathleen M. Keller
Bredhoff & Kaiser P.L.L.C.
805 Fifteenth St., N.W., Suite 1000
Washington, D.C.  20005-2207
(202) 842-2600

Glenn Rothner (CSB No. 67353)
Ellen Greenstone (CSB No. 66022)
Rothner, Segall, Greenstone & Leheny
510 South Marengo Ave.
Pasadena, CA  91101-3115
(626) 796-7555

Attorneys for Plaintiff John Ronches

Scott A. Kronland (CSB No. 171693)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151

Attorney for Plaintiff SEIU United Long Term Care Workers Local 6434

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Ronches, as Fiduciary of the Long Term Care Workers Health Plan, on behalf of the Plan participants and beneficiaries, and as Trustee of the Long Term Care Workers Health Trust Fund, on behalf of the Trust and its beneficiaries; SEIU United Long Term Care Workers Local 6434, as Fiduciary of the Long Term Care Workers Health Plan, on its own behalf, and on behalf of its members,  **PLAINTIFFS** <br><br> v. <br> Dickerson Employee Benefits, Inc., Tyrone Freeman, and TelaDoc, Inc.,  **DEFENDANTS** | CASE NUMBER <br><br> CV 09-4279 GAF (PJWx) <br><br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): _____

    A lawsuit has been filed against you.

    Within ____20____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Julia Penny Clark</u>_____ , whose address is <u>Bredhoff & Kaiser P.L.L.C., 805 Fifteenth St., NW, Ste. 1000, Washington, D.C. 20005</u>_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                        Clerk, U.S. District Court


Dated: ___JUN 1 6 2009_____          By: _____*Nancy Cases*_____
                                                    Deputy Clerk

                                                    *(Seal of the Court)*


*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                          **SUMMONS**

                                                                        CCD-1A